UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| BARRY JOHNSON | CIVIL ACTION |
| VERSUS | NO. 06-10689 |
| HORIZON OFFSHORE CONTRACTORS, INC. | SECTION "N" (5) |

## ORDER AND REASONS

Before the Court is Defendant's **Motion for Summary Judgment (Rec. Doc. No 24)**. This motion, which was opposed, was set for hearing on March 12, 2008, without oral argument. After reviewing the memoranda of the parties and the applicable law, this Court finds that this motion should be granted in part and denied in part.

**I.     Factual Background and Procedural History**

Barry Johnson ("Johnson") was employed by Horizon Offshore Contractors, Inc., ("Horizon") which operated the SEA HORIZON, a pipelay/derrick barge. Horizon obtained work from Israeli Electric Company ("IEC") to lay pipeline, beginning around July of 2004. Johnson and other Horizon employees worked on the IEC job.

Johnson was specifically assigned to the horizontal directional drilling ("HDD") aspect of the IEC job. (Exhibit 1 to motion, pp. 94-95). Johnson worked rigging up a construction barge (not the SEA HORIZON) and getting a jack-up vessel ready for the HDD aspect of the job for two to three weeks in Haifa, Israel. (Exhibit 1 to motion, pp. 98-100). While doing so, Johnson ate his

1

meals ashore and slept in a hotel in Haifa. (Exhibit 1 to motion, pp. 100-101).

Next, Johnson worked on "goal post" installations for the HDD part of the job. To do this job, he rode a tow from Haifa to Reading, Israel and began spending nights at a hotel in Tel Aviv (Exhibit 1 to motion, pp. 102-106). While doing this job, Johnson worked with Sam Jamison, Levi Remedies, and another Horizon employee. (Id.) Johnson asserts that he spent time aboard the SEA HORIZON either when the weather was too rough for the construction barge or for an occasional lunch. (Exhibit 1 to motion, at pp. 106-108). Johnson contends that he spent at least one night but maybe even two to three nights aboard the SEA HORIZON; however, he does not know exactly when he did so. (Exhibit 1 to motion, pp. 113-114).

Johnson asserts that he caught a viral infection on or about August 13, 2004, which he claims led to cardiomyopathy. (Complaint, ¶IV). After Johnson was in Israel for about 50 days, and while he was aboard a construction barge (not the SEA HORIZON), he began having stomach cramps. (Exhibit 1 to motion, pp 115-116). A few days later, Johnson allegedly developed a cough and asthma-like problems. (Id.) Johnson was treated in Israel for his illness; he was given antibiotics. It was also recommended to Johnson that he return home. The three individuals with whom Johnson worked closely, (Jamison, Remedies, and the other worker) did not get sick while they were in Israel. (Exhibit 1 to motion, p. 105).

In August of 2004, Johnson flew back to the United States. Robert Myers, a Horizon HSE officer and medic, who was aboard the SEA HORIZON during the IEC job, flew back with Johnson. (Exhibit 2 to motion, pp. 8; 14-15). During the flight back, Johnson did not complain about the treatment he received in Israel. (Exhibit 2 to motion, pp. 71-72).

Upon his arrival at the Houston airport, Johnson was met by Dianne McMurtrey, Horizon's

2

claims supervisor. (Exhibit 4 to motion, pp. 4-5). Johnson did not complain to McMurtrey about the care he had received in Israel, about actions taken by the medics, or about there being a number of people sick on the job in Israel. (Exhibit 4 to motion, pp. 38-39). While in Houston, Johnson was seen and examined by Dr. Robert L. Arkus, who released Johnson to his regular activities, with no further treatment required, as of August 25, 2004. (Exhibit 7). Johnson was also examined by Dr. Nalini Dave, on August 30, 2004, who requested that Johnson undergo an echocardiogram.

In or around September of 2004, Johnson returned to work for Horizon aboard the LONE STAR HORIZON in Mexico. Johnson left that vessel in October 2004 after receiving a call from his wife instructing him to return to the U.S. to check on his health. (Exhibit 6 to motion, p. 7). Horizon claims Johnson has not worked since leaving the LONE STAR HORIZON. Interestingly, Johnson claims he has not worked since August of 2004. (See opposition, p. 3).

Upon his return to the United States from Mexico, on October 8, 2004, Johnson underwent the echocardiogram, which was performed by Dr. Julio Teran. Dr. Teran determined that Johnson had a "mildly enlarged and diffusedly hypokinetic left ventricle consistent with early cardiomyopathy." (Exhibit 3 to opposition). Dr. Dave, who Johnson had seen in August of 2004 and who had recommended the echocardiogram, also diagnosed Johnson with cardiomyopathy. (Exhibit 4 to opposition).

On December 9, 2005, Johnson, who has a family history of heart disease and hypertension but who had never before experienced any type of heart trouble or heart related illness, received a dual-chamber cardiac defibrillator ("ICD") system from Dr. Rodney Horton. At Horizon's request, Johnson had also been seen by Dr. Hisaham Dokainish, a board-certified cardiologist, in January and July of 2005. Dr. Dokainish had recommended against the ICD. (Exhibit 8, Attachments A, C,

3

D).

In November of 2006, Johnson sued Horizon for negligence under the Jones Act, 46 U.S.C.App. §688, and for unseaworthiness and maintenance and cure under the general maritime law. Johnson asserts that Horizon had failed to provide a safe place to work, and exposed him to viruses through other employees aboard the SEA HORIZON. Specifically, Johnson claims that Horizon allowed "sick, virus infected employees" to work aboard the SEA HORIZON and failed to provide proper medical treatment to employees aboard the SEA HORIZON, including Johnson. (Complaint, ¶V). Johnson claims that Horizon failed to provide him with proper medical care and did not allow him time to recover from his illness. (Complaint, ¶¶ VI-VII). Johnson also complains about the manner in which he was paid maintenance. (Complaint ¶¶ X; XII).

Horizon retained Dr. Dokainish as an expert. In his January 31, 2008 expert report (Exhibit 8, Attachment B), Dr. Dokainish rendered opinions regarding the condition of Johnson's heart, the need for his ICD implantation, and how/when he contracted his illness. Specifically, Dr. Dokainish determined that it is not possible to state where Johnson contracted his illness and how Johnson contracted his illness. Dr. Dokainish determined that it is not possible to relate Johnson's illness to any conditions aboard a vessel, or to relate his illness to his work. Dr. Dokainish also found that it is not possible to determine the condition of Johnson's heart prior to the time he traveled to Israel. Potentially, Johnson's heart damage could have been preexisting and/or congenital. (See Exhibit 8 to motion).

Johnson did not produce an expert report from a cardiologist to address and/or contest these conclusions.

4

**II.     Law and Analysis**

    A.     Legal Standard - Motion for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment may be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Fed.R.Civ.P. 56(c). See also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The materiality of facts is determined by the substantive law's identification of which facts are critical and which facts are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.*

Initially, the movant bears the burden of demonstrating the absence of material fact issues. *Abbott v. Equity Group, Inc.*, 2 F.3d 613, 619 (5th Cir.1993). The movant is not required, however, to negate the elements of the nonmovant's case. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (citing *Celotex*, 477 U.S. at 323). If the dispositive issue is one for which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its summary judgment burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *Celotex*, 477 U.S. at 325. If the movant meets his burden, then the burden then shifts to the nonmovant, who, to avoid summary judgment, must go beyond the pleadings and designate specific facts that show that there is a genuine issue for trial. *Little*, 37 F .3d at 1075 (citing *Celotex*, 477 U.S. at 325). Of course, unsubstantiated assertions do not constitute competent summary judgment evidence. *Abbott*, 2 F.3d at 619 (citing *Celotex*, 477 U.S. at 324).

Before granting a motion for summary judgment, the district court must be satisfied that no reasonable trier of fact could find in favor of the nonmoving party. *Anderson*, 477 U.S. at 249; *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir.1969) (stating that "the facts and inferences [must] point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict"). In determining whether a material issue of fact exists, the evidence and all inferences drawn therefrom must be considered in the light most favorable to the non-moving party. *Baker v. American Airlines, Inc.*, 430 F.3d 750, 753 (5th Cir.2005) (quoting *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir.2005)).

B.   Analysis

Horizon has filed the instant motion for summary judgment[1], seeking to dismiss with prejudice all of Johnson's claims, including those for Jones Act negligence, unseaworthiness, and maintenance and cure.

1.   Johnson's Jones Act Negligence Claim

Under the Jones Act, a seaman's[2] employer is liable for damages if the employer's negligence caused the seaman's injury. See *Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 335 (5th Cir.1997). The employer is held to the standard of ordinary prudence under the circumstances. *Id*. at 336 (explaining that the circumstances include employee's reliance on his employer to provide

---

[1] The Court notes that Johnson spent two pages of his seven-page opposition (only one paragraph of which actually opposes Horizon's motion; see pp.5-6 of opposition), claiming that this motion for summary judgment is premature. The Court fails to see how Johnson can make this argument in good faith as this motion for summary judgment was filed and set for hearing one month prior to trial. Johnson argues that he is still waiting on certain documents from Horizon, but fails to explain why he neglected to file a motion to compel these documents. Johnson also fails to explain why the depositions that he claims are necessary to support his case could not have been taken within the time delays set by the Court. In fact, the discovery deadline was February 14, 2008. The Court notes that it never received a request to extend the discovery deadline. Thus, the Court must decide this motion for summary judgment with the Rule 56 evidence presently before it.

[2] There is apparently no dispute regarding Johnson's status as a seaman.

6

a safe working environment, the seaman's experience, training or education). The seaman is held to the standard of the reasonable seaman in like circumstances. *Id.* at 339. A seaman may prevail in a Jones Act action if he shows that "employer negligence played any part, even the slightest, in producing the injury ... for which damages are sought." *Id.* at 335. "Although in Jones Act cases a 'jury is entitled to make permissible inferences from unexplained events,' summary judgment is nevertheless warranted when there is a complete absence of proof of an essential element of the nonmoving party's case." *In Re Cooper/T. Smith*, 929 F.2d 1073, 1077 (5th Cir. 1991) (quoting *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir.1987)).

Here, Horizon asserts that the evidence belies any claim by Johnson that there were multiple ill individuals aboard the SEA HORIZON. Horizon claims that Johnson does not have and has not presented any competent evidence that there was a viral illness aboard the SEA HORIZON. Johnson argues, on the other hand, that he has shown through his medical records that he suffered an "illness while in the service of the vessel" in Israel. Johnson notes that Dr. Dokanainish, who he saw at Horizon's request, stated as follows:

> Mr. Johnson has a history suggestive of post-viral cardiomyopathy, as there is a temporal relationship between the onset of viral-type symptoms in Israel, followed by documentation of a depressed left ventricular ejection fraction on serial echocardiograms in Bryan, Texas.

(Exhibit 5 to opposition). However, Johnson's brief assertions regarding this claim are insufficient to survive summary judgment.

To support its position that summary judgment is proper on Johnson's Jones Act negligence claim, Horizon cites the Sixth Circuit case of *Mayhew v. Bell S.S. Co.*, 917 F.2d 961 (6th Cir. 1990), which this Court finds persuasive. In *Mayhew*, the Sixth Circuit explained:

> Although a Jones Act plaintiff need not present medical evidence that the

7

> defendant's negligence was the proximate cause of the injury, we believe that a medical expert must be able to articulate that there is more than a mere possibility that a causal relationship exists between the defendant's negligence and the injury for which the plaintiff seeks damages.

917 F.2d at 963.  Relying on that reasoning, the Sixth Circuit affirmed the district court's striking of certain portions of a medical expert's testimony as speculative.  Thus, "[i]n a Jones Act case, a seaman has the burden of proving by medical testimony that his injuries were due to the defendant's negligence. *Ginter v. Sea Support Services L.L.C.*, 2001 WL 1602154 (E.D. La. Dec. 12, 2001) (citing *Mayhew*, 917 F.3d at 963).  See also *Crane v. Diamond Offshore Drilling, Inc.*, 99-166 (La.App. 5th Cir.9/15/99), 743 So.2d 780, 793 (Jones Act seaman must introduce medical evidence that shows "there is a reasonable possibility of causal connection between the accident and the disabling condition").

Aside from the vague temporal connection existing between the onset of Johnson's symptoms and his work for Horizon in Israel while aboard the SEA HORIZON, Johnson has presented no evidence whatsoever to show a causal connection between his illness and his work for Horizon in Israel.  Speculation and conjecture, which is essentially all Johnson has presented to the Court here, is insufficient to show that there is more than a mere possibility that a causal relationship exists between Horizon's alleged negligence and Johnson's injury.  Moreover, the evidence presented to the Court by Horizon further strengthens this conclusion.

To address Johnson's assertions regarding other illnesses aboard the SEA HORIZON, Myers, the medic aboard the SEA HORIZON, confirmed that there was no "clustering" of illnesses aboard the SEA HORIZON. (Exhibit 2 to motion, pp. 30:74-75).  Myers did not recall individuals aboard the SEA HORIZON having problems with fever, cough, or flu-like symptoms.  (Exhibit 2 to motion, pp. 27; 50-51). Nmadu, Horizon's senior project engineer for

the IEC job, testified that he did not know of anyone else who fell ill or reported being ill during the IEC job, and he never heard of any "clustering" of illnesses. (Exhibit 3 to motion, pp. 25; 31). Dianne McMurtrey, the claims supervisor who receives the illness reports for Horizon, did not receive reports of illness from the IEC job, other than Johnson's illness report. (Exhibit 4 to motion, pp. 39-40). Aside from his unsupported assertions, Johnson has not shown whether other employees had viruses, much less has the same viral illness he allegedly contracted. He cannot show that he came into contact with sick individuals working for Horizon or aboard the SEA HORIZON.

As for Johnson's claims regarding the adequacy of his medical treatment, Johnson has not put forth any evidence indicating that his condition was worsened by inadequate care. When Johnson needed a hospital, Horizon had him treated at one in Israel. Johnson flew back from Israel with Myers, a Horizon HSE officer and medic. During that flight, Johnson did not make any complaints about the treatment he received in Israel to Myers. (Exhibit 2 to motion, pp. 71-71). McMurtrey, Horizon's claims supervisor, met Johnson at the airport upon his return to the United States. McMurtrey testified that Johnson did not complain to her about the care he had received in Israel or about anything the medics had done in Israel. (Exhibit 4 to motion, pp.38-39). Johnson has presented absolutely no evidence to support this aspect of his claim.

Further, Johnson has not put forth any expert medical testimony, much less any medical testimony that will support his claims. Johnson failed to produce an expert report to support his claims. Johnson neglected to take the deposition of one doctor who allegedly supports his claims in this case. On the other hand, Horizon produced the affidavit and reports of Dr. Dokainish, who

9

is board-certified in cardiology and certified in echocardiography.  Dr. Dokainish's affidavit and attachments reveal that Johnson's claim cannot succeed.  Dr. Dokainish determined that it is not possible to state where Johnson contracted his illness and how Johnson contracted his illness.  Dr. Dokainish determined that it is not possible to relate Johnson's illness to any conditions aboard a vessel, or to relate his illness to his work.  Dr. Dokainish also found that it is not possible to determine the condition of Johnson's heart prior to the time he traveled to Israel.  In other words, Johnson's heart damage could have been preexisting and/or congenital.  (See Exhibit 8 to motion).

Based on all of the above, Johnson cannot preval on his Jones Act negligence claim because he has not shown that Horizon played even the slightest part in causing his illness.  Summary judgment is warranted in this instance as there is a complete absence of proof of Johnson's claim.

        2.        Johnson's Unseaworthiness Claim

The burden of proof is higher under the Jones Act than than for unseaworthiness under general maritime law. Thus, because Johnson's Jones Act fails, so does his claim for unseaworthiness under general maritime law.  See *In re Cooper T. Smith*, 1990 WL 109404 (E.D. La. 1990).  The Court finds that there is no way the SEA HORIZON can reasonably be considered unseaworthy.  Aside from mere speculation as to the timing of his illness, which he cannot prove medically caused his cardiomyopathy, Johnson cannot show that there was anything wrong with the place of work he was provided. As stated herein, Johnson has not shown that others fell ill aboard the SEA HORIZON.  In fact, all testimony and evidence before the Court shows otherwise.

The Court further notes that while Johnson was working the HDD project near the shore in Reading, Israel, he spent his nights in a hotel, on shore.  Johnson also spent time on a small deck barge.  Johnson could have, just as easily, contracted his illness while ashore, either at a hotel or a restaurant.  Johnson cannot show what, if any, of his exposure to the illness was aboard the SEA HORIZON.  Essentially, Johnson has presented the Court with no evidence of where he contracted his illness.

Thus, based on the above, Johnson's claim for unseaworthiness under general maritime law is dismissed.

### 3. Johnson's Maintenance and Cure Claim

Maintenance and cure is the implied contractual right of a seaman who is injured in the service of the ship, regardless of fault, to payments from the shipowner through the time of maximum recovery.  "The shipowner's obligation to pay maintenance and cure ... is not based on fault but results from the relationship of ship and seaman." *Adams v. Texaco, Inc.*, 640 F.2d 618, 620 (5th Cir.1981) (citation omitted).  Payments of advanced wages covering periods beyond the voyage and for temporary disability do not come under the aegis of the shipowner's obligation to pay "maintenance and cure." *Durgin v. Crescent Towing & Salvage, Inc.*, 2002 WL 31365365, *2 (E.D. La. Oct. 18, 2002).

Horizon claims that Johnson incorrectly alleges that his maintenance was terminated in March 2006.  Instead, Horizon explains that the advances it was providing to Johnson were terminated then.  Johnson has admitted that Horizon continues to pay maintenance to him.  (Exhibit 1 to motion, pp. 169-170).   Thus, Johnson's claim regarding the termination of his maintenance payment fails.

Last, Johnson alleges in his Complaint that his maintenance payments are improperly low and are not sufficient to meet his daily living expenses.  Horizon did not mention this aspect of Johnson's claim in its motion for summary judgment; thus, only this part of Johnson's maintenance claim survives summary judgment.

### III.  CONCLUSION

Considering the foregoing, **IT IS ORDERED** that Defendant's **Motion for Summary Judgment (Rec. Doc. No 24)** is **GRANTED IN PART and DENIED IN PART** for the reasons stated above.

New Orleans, Louisiana, this 31st day of March, 2008.

        **KURT D. ENGELHARDT**
        **United States District Judge**